HONORABLE RONALD B. LEIGHTON

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

OCCUPATIONAL MEDICAL CLINIC OF TACOMA, INC., a Washington corporation; and THE ESTATE OF NICK WILLIAM URAGA, M.D.,

Plaintiffs,

v.

HARTFORD INSURANCE COMPANY, an insurance company,

Defendant.

CASE NO. 3:12-cv-05089-RBL

ORDER DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

[Dkt. #21 & #32]

THIS MATTER is before the Court on Defendant Hartford Insurance Company's Motion for Summary Judgment [Dkt. #21]. Occupational Medical Clinic of Tacoma, Inc., ("OMCT" or "the Clinic") and Dr. Nick William Uraga were insured by Hartford. The policy covered damage to the Clinic's building and lost business income that resulted from the damage. A fire destroyed the building, and Hartford began to pay Plaintiffs' claims. This case arises out of Uraga's medical license suspension and Hartford's subsequent refusal to pay the claim in full. Plaintiffs allege in their complaint that Hartford breached the insurance contract and acted in bad faith.

Hartford brings this Motion for Summary Judgment, contending that Plaintiffs are not entitled to business income benefits because they were no longer able to earn income after

ORDER DENYING DEFENDANT'S MOTION
FOR SUMMARY JUDGMENT - 1

Uraga's license suspension. It also argues that the entire policy should be voided because Plaintiffs misrepresented and concealed material facts about the suspension. Plaintiffs argue that questions of material fact exist for both issues that preclude the grant of summary judgment.

For the reasons stated below, Hartford's Motion for Summary Judgment [Dkt. #21] is **DENIED**. Also, because summary judgment is denied, Plaintiffs' Motion to Continue Summary Judgment [Dkt. #32] is **DENIED as MOOT**.

## I.  STATEMENT OF FACTS[1]

Dr. Nick Uraga was the sole owner of OMCT and personally owned the building that housed it. (Hartford's MSJ, Dkt. #21 at 2.) Uraga was OMCT's only licensed doctor. (*Id.*) Stephen Fewell, PA-C, a licensed physician assistant, began working at OMCT in 1997. Part of Uraga's offer to Fewell was to convey the Clinic to him upon Uraga's retirement.[2] (Pls.' Resp., Dkt. #28 at 3.) By 2010, Fewell was performing virtually all of the medical examinations and handling many of the administrative functions at the Clinic. (*Id.*) Approximately 80% of OMCT's revenue at that time was attributable to Fewell. (*Id.*)

On April 24, 2010, a fire damaged Uraga's building and caused OMCT to suspend operations. (*Id.*) Another tenant in the building also suspended operations. (*Id.*) At the time of the fire, both OMCT and the building were insured by Hartford under a commercial property

---

[1] Because this is Hartford's Motion for Summary Judgment, the facts are presented with inferences drawn in favor of OMCT and Uraga.

[2] Hartford moves under Washington's Dead Man Statute, RCW 5.60.030, to strike portions of Fewell's testimony of statements made by Uraga before his death. Its argument that Fewell's testimony should be excluded because he is an "interested party" is misplaced. As Karl Tegland notes,

> The purpose of the statute is to protect the estate of the deceased, not to hinder proof by the estate beyond the hindrance already created by the fact that the deceased is not present to testify. Consequently, the statute does not prohibit a witness from testifying on behalf of, or in favor of, the deceased or the estate of the deceased.

Karl Tegland, 5A Wash. Prac., Evidence Law and Practice § 601.22 (5th ed.) (citing *Fies v. Storey*, 21 Wash. App. 413 (1978). Because Fewell's testimony that Uraga would convey the Clinic to him is in favor of Uraga's estate, the Dead Man's Statute does not exclude the testimony. The Motion to Strike is **DENIED**.

1  policy. (*Id.* at 4.) OMCT and Uraga hired Adjusters International, a public adjusting firm, to
2  represent their interests in their insurance claims. (*Id.*)

3  On July 2, 2010, Uraga's medical license was suspended as a result of pending state
4  criminal charges filed against him. (*Id.* at 5.) In order to practice as a physician assistant, Fewell
5  was required to have a state approved supervising physician. (Hartford's MSJ, Dkt. #21 at 5-6.)
6  Dr. Eric Smith was listed as his "alternate" supervising physician, but Uraga was Fewell's
7  primary supervising physician. (*Id.*) Hartford argues that Uraga's suspension resulted in
8  Fewell's license also being suspended under RCW 18.17A and WAC 246-918. (*Id.*) Plaintiffs
9  argue that Fewell would still have been able to practice under his alternate supervisor, because he
10 was already approved as a supervisor whenever Uraga was away from the clinic for any period
11 of time. (Pls.' Resp., Dkt. 28 at 6.)

12 Fewell notified Drew Lucurell of Adjusters International of the license suspension. (*Id.*
13 at 5.) After speaking with Uraga, Lucurell concluded that the license suspension was not
14 material to the Business Income claim because Fewell could have kept generating the same
15 revenues after getting a new supervising physician approved by the state. (*Id.* at 6.) Adjusters
16 International continued to calculate BI in the same manner as before the suspension. (*Id.*) Uraga
17 did not inform Hartford about the suspension. (*Id.*)

18 Not knowing how long Uraga's license would be suspended, on September 8, 2010,
19 Fewell submitted paperwork to the State to identify Smith as his primary supervising physician.
20 (*Id.*) Perhaps due to a clerical error, the State filed the documents, but did not technically
21 approve the new plan. (*Id.* at 7.) A few months later, Fewell learned that his documents were
22 not approved. (*Id.*) He quickly resolved the issue, and Smith was approved as the supervising
23 physician on March 29, 2011. (*Id.*)

24

1      Meanwhile, Hartford discovered in January 2011 that Uraga's license had been

2  suspended nearly six months earlier. (Hartford's MSJ, Dkt. #21 at 3.) Attorney Dana Ferestien

3  conducted an examination under oath of Uraga on March 17, 2011. (*Id*.) Uraga confirmed that

4  his license was presently suspended. (Pls.' Resp., Dkt. #28 at 7.) Based on that information,

5  Hartford determined that OMCT could not have produced any income from the date of Uraga's

6  suspension, July 2, 2010, until Fewell's new plan was approved, March 29, 2010. (*Id*. at 7-8.)

7  Hartford continued to pay toward the building and contents damage, but offset its payments

8  based on its determination that it had already overpaid on the BI claim. (*Id*. at 8.)

9      OMCT reopened on May 23, 2011. (*Id*. at 9.) Since that time, Fewell has provided all of

10  the patient care and manages the Clinic with Smith as his supervising physician. (*Id*.)

11      Just before his criminal trial in June 2011, Uraga took his own life. (*Id*.) In probate,

12  OMCT was conveyed to Fewell, as Uraga had provided for in his will. (*Id*.) OMCT is now

13  solely owned by Fewell. (*Id*.)

14      Uraga's Estate and OMCT filed this lawsuit against Hartford in January 2012, seeking

15  unpaid contractual benefits and alleging bad faith. (*Id*.) Hartford seeks summary judgment,

16  arguing that Uraga's failure to inform it of his license suspension was a material

17  misrepresentation that voided the policy and that no BI payments were due after his license was

18  suspension. (*Id*.)

19                  **II.    DISCUSSION**

20  **A.  Summary Judgment Standard**

21      Summary judgment is appropriate when, viewing the facts in the light most favorable to

22  the nonmoving party, there is no genuine issue of material fact which would preclude summary

23  judgment as a matter of law. Once the moving party has satisfied its burden, it is entitled to

24  summary judgment if the non-moving party fails to present, by affidavits, depositions, answers to

interrogatories, or admissions on file, "specific facts showing that there is a genuine issue for trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). "The mere existence of a scintilla of evidence in support of the non-moving party's position is not sufficient." *Triton Energy Corp. v. Square D Co.*, 68 F.3d 1216, 1221 (9th Cir. 1995). Factual disputes whose resolution would not affect the outcome of the suit are irrelevant to the consideration of a motion for summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In other words, "summary judgment should be granted where the nonmoving party fails to offer evidence from which a reasonable [fact finder] could return a [decision] in its favor." *Triton Energy*, 68 F.3d at 1220.

### B. Misrepresentation

OMCT's insurance policy (like virtually all such policies) does not cover fraud, and an insured's fraud can lead to the insurer voiding the policy: "This policy is void in any case of fraud by you as it relates to this policy at any time. It is also void if you or any other insured, at any time, intentionally conceal or misrepresent a material fact…." (Hartford's MSJ, Dkt. #21 at 5.) Hartford asserts that Uraga's concealment of his license suspension was a material misrepresentation that voided the entire policy. OMCT argues that questions of material fact exist as to whether that information was material, whether it was concealed, and whether it was done so intentionally.

In order to establish a material misrepresentation, Hartford must demonstrate that the insured knowingly misrepresented or concealed material facts and that, in making those representations or concealments, the insured intended to deceive the insurance company. *Ki Sin Kim v. Allstate Ins. Co., Inc.*, 153 Wash. App. 339, 355-56 (2009) (citing *Kay v. Occidental Life Ins. Co.*, 28 Wash.2d 300, 301 (1947). Assuming that Uraga's failure to inform Hartford of his

license suspension was a material misrepresentation,[3] the issue becomes whether it was done with intent to deceive. Hartford argues that OMCT cannot offer any evidence to overcome the presumption that it intended to deceive Hartford. OMCT argues that Uraga had reason to believe Lucurell's opinion that the BI claim would not be affected, and therefore the suspension would not be material to Hartford. It argues that this is question of fact for the jury.

Whether a misrepresentation is made with intent to deceive is a question of fact. *Wilburn v. Pioneer Mutual Life Ins. Co.*, 8 Wash. App. 616, 620 (1973). Nonetheless, in analyzing RCW 48.18.090, the Washington Supreme Court noted that "[w]hen a false statement has been made knowingly, there is a presumption that it was made with intent to deceive…." *Music v. United Ins. Co. of Am.*, 59 Wash.2d 765, 769 (1962). In other words, if the insured knowingly made a false statement, the burden shifts to the insured to establish an honest motive or an innocent intent. *Kay,* 28 Wash.2d at 302. The insured's bare assertion that he did not intend to deceive the insurance company is not credible evidence of good faith and, in the absence of such credible evidence, the presumption warrants a finding in favor of the insurance company. *Id*.

OMCT has provided enough evidence to rebut the presumption that any concealment was done with intent to deceive. Viewed in the light most favorable to OMCT, the evidence suggests that Uraga acted based on Adjusters International's opinion and reasonably believed that his license suspension would not affect the BI claims. The fact that he was forthright about his suspension during his examination under oath also supports the possibility of a jury finding he did not intend to deceive. Thus, OMCT has offered more than just a "bare assertion" that he did not intend to deceive the insurance company and successfully raised a question of material fact

---

[3] Materiality is evaluated from the insurer's perspective. *Allstate Ins. Co. v. Huston*, 123 Wash. App. 530, 540 (2004) ("[A] misrepresentation is 'material' if, when made, it could have affected the insurer's investigation.").

for a jury to decide.  Hartford's Motion for Summary Judgment based on material misrepresentation is DENIED.

**C.  Business Income Coverage**

Hartford argues that once Uraga's license was suspended, Fewell's license was also suspended, and he could no longer generate revenue for OMCT.  Therefore, it argues, no BI coverage was warranted after that date.  OMCT argues that there is a question of material fact because a jury could find that Fewell would have kept OMCT operating under Dr. Smith's supervision, and OMCT would have continued to produce revenue.

The question of whether OMCT would have earned Business Income but for the fire necessarily deals in hypotheticals.  The question, "would OMCT have continued to earn income if the fire had not occurred?" requires more than just looking at what actually happened during the period the building was unusable.  Hartford might be correct in asserting that Fewell could not practice after Dr. Uraga's license was suspended, but that does not answer the right question.  The policy defines Business Income as "Net Income…that would have been earned or incurred if no direct physical damage had occurred."  (Hartford's MSJ, Dkt. #21 at 6.)  Therefore, it is not only a question of "what happened after the fire?"  The real question is "what would have happened if there never was a fire?"  Viewed in the light most favorable to OMCT, the evidence supports a finding that if the building was never damaged, Uraga would have transferred ownership to Fewell once his license was suspended; Fewell would have kept the clinic operating under Dr. Smith's supervision; and OMCT would have continued to generate positive revenue.  This is true regardless of whether Fewell's license would have initially been suspended along with Uraga's.  Uraga would not be able to earn income for OMCT, but Fewell was already the primary source of its revenue, and he would have continued to act as such.  As OMCT argues, it makes little sense that if the building was still in place Fewell and Uraga would have

simply let Fewell's license lapse and the successful business fold after Uraga's suspension. Thus, even though there was a period of time where Fewell's license status was unclear, it cannot be said as a matter of law that he would not have filed his paperwork with the state sooner if there was never a fire. It is up to a jury to determine whether OMCT would have earned income subsequent to Dr. Uraga's license suspension if no fire ever occurred.

### III.   CONCLUSION

Hartford's Motion for Summary Judgment [Dkt. #21] is **DENIED**.   Plaintiffs' Motion to Continue Summary Judgment [Dkt. #32] is **DENIED as MOOT**.

IT IS SO ORDERED.

Dated this 14th day of December, 2012.

_____
Ronald B. Leighton
United States District Judge